**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Daniel J. Newbanks and Jennifer Walton, on behalf of themselves and all others similarly situated, </br></br>          Plaintiffs, </br></br>v. </br></br>Cellular Sales of Knoxville, Inc. and Cellular Sales of South Carolina, LLC </br></br>          Defendants. | C.A. No. 3:12-1420-CMC </br></br></br>**ORDER GRANTING PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY** |

This matter is before the court on motion to dismiss for lack of personal jurisdiction filed by Defendant Cellular Sales of Knoxville, Inc. ("CSOKI"), on July 11, 2012. Dkt. No. 5. Plaintiffs filed a response on August 17, 2012 (Dkt. No. 23), to which CSOKI replied on August 29, 2012 (Dkt. No. 31). For the reasons set forth below, the court defers ruling on CSOKI's motion to dismiss and grants Plaintiffs' request for jurisdictional discovery.

## BACKGROUND

Plaintiffs Daniel J. Newbanks ("Newbanks") and Jennifer Walton ("Walton") allege that Defendants CSOKI and Cellular Sales of South Carolina, LLC ("CSSC-LLC") violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"). Plaintiffs allege that Defendants "misleadingly classified them as independent contractors in order to avoid state and federal laws including the FLSA and SCPWA." Dkt. No. 23 at 1. Plaintiffs have asserted this action on behalf of themselves and other similarly-situated persons, alleging the following:

> In order to operate its various stores the Defendants have created an illegal and unlawful scheme by which they require all employees in the retail stores to each form

a limited liability company, corporation and/or other legal entity and these Defendants then enter into various contracts and agreements where the newly formed LLC, Corporation or other legal entity of the employee staffs the store as an "independent contractor".

Dkt. No. 1 at ¶ 14. ("Complaint"). Plaintiffs Newbanks and Walton allege that when they were hired by Defendants in May 2011 and October 2011, respectively, they were required to form a limited liability company ("LLC"), and that they and their LLCs entered into contracts with Defendants. *Id.* at ¶¶ 34, 35, 44, 45. Plaintiffs allege that Defendants categorized Plaintiffs as independent contractors but held them out as employees by scheduling their work shifts; providing them with all of the necessary equipment including the store location, cellular equipment, and service plans; mandating compliance with a dress code; mandating training and periodic meetings with supervisors and other employees; and by having Plaintiffs perform Defendants' core service of selling cellular telephones, equipment, and service plans through Verizon Wireless. *Id.* at ¶¶ 38, 48.

In December 2011, Plaintiffs allege that Defendants advised them that, as of January 1, 2012, payments for their services would be made to them individually, and not their LLCs. *Id.* at ¶¶ 39, 49. Both Plaintiffs left their employment "with Defendants" in 2012. *Id.* at ¶¶ 40, 50.

"In short, Plaintiffs allege Defendants misleadingly classified them as independent contractors in order to avoid state and federal laws including the FLSA and SCPWA." Dkt. No. 23 at 1. In addition, Plaintiffs allege that Defendants violated the minimum wage and overtime provisions of the FLSA "by instituting policies and procedures where employees were charged back for commissions on merchandise when customers refused to honor cellular telephone service contracts with Verizon Wireless" and "charged back for commissions for lost, stolen or damaged merchandise when employees were not responsible for the lost, stolen or damaged merchandise."

Complaint at ¶65. Also, Plaintiffs allege that Defendants violated the FLSA by "withholding money from . . . final paychecks for times in the future when customers refused to honor cellular telephone service contracts with Verizon and/or for lost, stolen or damaged merchandise that may be discovered after the employee left employment with Defendants." *Id.*

## STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Financial Corp. v. Flagship Resort Development Corp.,* 416 F.3d 290 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). "'But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.'" *Id.* (quoting *Combs*, 886 F.2d at 676). *See also* Wright & Miller, Federal Practice and Procedure § 1067.6 ("Wright & Miller") ("Although the Supreme Court never had spoken to the burden of persuasion question [before 1985], it has been held uniformly in the lower federal courts that the burden of making a prima facie showing of the existence of personal jurisdiction falls on the plaintiff [.]"). To satisfy that threshold, Plaintiffs must present at least some evidence in support of their position. Wright & Miller § 1067.6 (the prima facie showing "must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts"); *id.* ("When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint.").

3

"In general, a federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *ESAB Group, Inc. v. Zurich Insurance PLC*, 685 F.3d 376, 391 (4th Cir. 2012) (internal quotations omitted). However, because South Carolina's long-arm statute extends to the limits of constitutional due process, the two steps collapse into a constitutional due process analysis. *Id.*

Personal jurisdiction over a foreign defendant may be either specific or general. *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir. 1989). The exercise of specific jurisdiction is warranted when the claims arise out of defendant's activities within the forum state. *Id.* General jurisdiction, on the other hand, requires a continuous presence within the forum state and applies even when the claim is unrelated to defendant's activities within that state. *Id.* "To establish general jurisdiction, the defendant's activities in the state must have been 'continuous and systematic.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citing Wright & Miller, § 1067 ("threshold contacts required for general jurisdiction are very substantial, indeed")).

The specific jurisdiction analysis involves a three-part inquiry: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise

4

of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 391-92 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). To establish the first prong, "the court must find that the defendant has established 'minimum contacts' with the forum state by 'purposefully avail[ing itself] of the privilege of conducting business under the [state's] laws.'" *Id.* at 392.¹ The second prong requires that "the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278. The third prong of constitutional reasonableness is reached if the first and second prongs are satisfied. "To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"² *ESAB Group*, 685 F.3d at 393 (quoting *Burger King*, 471 U.S. at 477).

---

¹ The Fourth Circuit has summarized various factors courts have considered in the business context to determine whether a business purposefully availed itself of the forum state:
> • whether the defendant maintains offices or agents in the forum state;
> • whether the defendant owns property in the forum state;
> • whether the defendant reached into the forum state to solicit or initiate business;
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
> • whether the parties contractually agreed that the law of the forum state would govern disputes;
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
> • the nature, quality and extent of the parties' communications about the business being transacted; and
> • whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs*, 561 F.3d at 278 (internal citations omitted).

² Such considerations include "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 278 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

5

**DISCUSSION**

CSOKI seeks dismissal on the grounds that it lacks sufficient contacts with South Carolina to be subject to jurisdiction in this state. According to Defendants, CSOKI is the Tennessee parent company of various subsidiaries, including CSSC-LLC:

> CSOKI is the holding company of various subsidiary companies, including CSSC-LLC, which provide retail sales of Verizon Wireless services and related equipment and accessories (the "Business Operations") in various states, including Tennessee and South Carolina. CSOKI itself does not conduct the Business Operations. CSOKI also does not operate or conduct business in South Carolina. It is headquartered and maintains its principal place of business in Knoxville, Tennessee. CSSC-LLC conducts the Business Operations, but only in South Carolina, which is where it is registered to do business and maintains its offices. While CSOKI is the owner and sole member of CSSC-LLC, CSSC-LLC is a self-governing company with an independent board of directors. CSOKI does not exercise any control over CSSC-LLC and both companies operate as separate and distinct entities.

Dkt. No. 5 at 5 (citing Declaration of Julie Dean, Chief Financial Officer of CSOKI). Julie Dean avers that CSOKI did not employ Plaintiffs:

> CSOKI has never entered into a Sales Agreement, or any other type of agreement or arrangement, with Jennifer Walton or Daniel Newbanks or their Sales Companies. CSOKI also has never employed Ms. Walton or Mr. Newbanks. CSOKI did not set their rate of pay; nor did it ever handle or issue paychecks or any other type of payment to Ms. Walton or Mr. Newbanks or their sales companies. In fact, CSOKI has never had any sort of contact or communication with Ms. Walton or Mr. Newbanks. All employment decisions with respect to Mr. Newbanks and Ms. Walton were made by employees of CSSC-LLC, not by CSOKI.

Dkt. No. 5-1 at 2.

As attachments to the declaration of Mike Baker, Regional Director of CSSC-LLC, CSOKI submitted copies of Non-Exclusive Sales Agreements ("Sales Agreements") and Member Indemnification Agreements ("Indemnification Agreements") entered between Plaintiffs' LLCs and

6

CSSC-LLC, and dated the month after Plaintiffs' alleged date of hire.[3] Dkt. Nos. 5-3, 5-4, 5-6, 5-7.[4] CSOKI also submitted copies of undated Compensation Schedules signed by Newbanks and Walton as employees of "Cellular Sales," which Baker avers were executed in connection with their offers of full-time employment on or about December 30, 2011.[5] Dkt. Nos. 5-5, 5-8. The Compensation Schedules do not specify whether "Cellular Sales" is CSOKI or CSSC-LLC .

Defendants argue that CSOKI is not subject to personal jurisdiction in South Carolina simply because one of its subsidiaries – CSSC-LLC – is located in and operates in South Carolina. Dkt. No. 5 at 9 (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) ("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity . . . [and the plaintiff] has provided no evidence of the nature of the relationship between [the defendant] and its Texas subsidiary that would justify an exception to this general rule.")). Defendants contend that CSOKI's own contacts with the state are insufficient to subject CSOKI to personal jurisdiction in South Carolina. Defendants do not contest that CSSC-LLC is subject to personal jurisdiction in South Carolina.

Plaintiffs recognize the parent-subsidiary relationship between CSOKI and CSSC-LLC. *See Id.* at ¶ 12 (CSOKI "uses the various subsidiary companies listed above as well as other subsidiary

---

[3] The Complaint states that Newbanks was hired in May 2011 and Walton was hired in October 2011. Newbanks' Sales and Indemnification Agreements are dated June 7, 2011, and Walton's Sales and Indemnification Agreements are dated November 15, 2011.

[4] Baker signed the Sales and Indemnification Agreements on behalf of CSSC-LLC as "President." The court notes that Baker avers that "[a]t all times relevant to the claims in Plaintiffs' lawsuit," he "was acting as Regional Director for Cellular Sales of South Carolina." Dkt. No. 5-2 at 1.

[5] The Compensation Agreements contain an arbitration clause. Defendants have filed a motion to compel arbitration based on that clause. Plaintiffs have filed a response to that motion and have moved to amend their Complaint to exempt anything covered by the Compensation and Schedule Agreements.

companies to operate the 400 plus locations."). Plaintiffs also recognize that "the contacts of a subsidiary corporation do not necessarily subject the parent corporation to personal jurisdiction." Dkt. No. 23 at 9. Plaintiffs, however, argue that "[i]t is misleading and inaccurate for [CSOKI] to portray itself as merely a holding company of [CSSC-LLC]" and that CSOKI has "significant, regular and systematic contacts with South Carolina." *Id.*

In an effort to establish CSOKI's contacts with South Carolina, Plaintiffs submitted the following exhibits to their opposition brief: (1) application by CSOKI, as a foreign corporation, for certificate of authority to conduct business in South Carolina (Dkt. No. 23-1); (2) business filing profile from South Carolina's Secretary of State website showing that CSOKI is a foreign corporation with a registered agent in South Carolina (Dkt. No. 23-2); (3) affidavit of non-service, indicating that CSOKI's registered agent in South Carolina was no longer at address (Dkt. No. 23-4); (4) selected case filings from Richland County, South Carolina Circuit Court in which CSOKI was a defendant in a slip-and-fall case, and showing that CSOKI and CSSC-LLC leased property in Columbia, South Carolina[6] (Dkt. No. 23-4); (5) Affidavit of Daniel J. Newbanks and attachments of two CSOKI training manuals (Dkt. No. 23-5); (6) Affidavit of Jennifer Walton[7] (Dkt. No. 23-6); and (7) printouts from CSOKI's website (dated July 27, 2012), including employment opportunities for 5 locations in South Carolina (Dkt. No. 23-7).

---

[6] This includes an affidavit of Julie Dean, "Chief Financial Office of [CSOKI] and Vice President of [CSSC-LLC]." Dkt. No. 23-4 at 6. Dean states that CSOKI and CSSC-LLC co-signed a lease for space at 5401 Forest Drive, Columbia, South Carolina, on September 15, 2009. *Id.* at 7.

[7] Walton submitted an almost identical affidavit to Newbanks' affidavit, stating that she received training materials and purporting to attach the materials to the affidavit. Nothing was attached to Walton's affidavit.

Plaintiffs request that the court deny CSOKI's motion, arguing that South Carolina has specific and general jurisdiction over CSOKI. Dkt. No. 23 at 4-5. Plaintiffs also request, in the alternative, that the court allow Plaintiffs to conduct limited jurisdictional discovery. The court addresses the parties' arguments as to specific and general jurisdiction below.

**Specific Jurisdiction.** Plaintiffs argue that they need only "meet the lower threshold for specific personal jurisdiction because the nature of the case relates directly to Defendant's contacts with South Carolina." *Id.* at 4. Plaintiffs argue that "[a] cursory review of Defendant's website . . . shows that this Defendant is in the business of selling cellular telephones, accessories and service plans through Verizon Wireless," and that "Plaintiffs and the putative class actually carried out Defendant's business operations by selling these products at various store locations in South Carolina." *Id.* Plaintiffs contend that CSOKI leased the building of a store location where Newbanks and Walton worked (5401 Forest Drive, Columbia, South Carolina), and that Newbanks and Walton were trained using "sales materials" provided by CSOKI. *Id.* Because their claims arise out of their conducting CSOKI's business of "selling cellular telephones, accessories and service plans" in South Carolina, Plaintiffs argue that CSOKI is subject to personal jurisdiction in South Carolina.[8] *Id.*

---

[8] Plaintiffs also note that all notices and communications to "Distributor" arising under the Sales Agreements are to be mailed to the attention of Julie Dean at "Cellular Sales," 6513 Kingston Pike, Suite 106, Knoxville, Tennessee 37919. The "Distributor" is defined as CSSC-LLC. Plaintiffs, however, do not specifically argue that this fact supports specific or general jurisdiction. Rather, Plaintiffs argue that this fact, *inter alia*, supports jurisdictional discovery. Dkt. No. 23 at 11.

Further, Julie Dean declares that "CSOKI and CSSC-LLC do not maintain the same managers, employees, or bank accounts." Dkt. No. 5-1 at 2. The court notes, however, that Dean submitted an affidavit in the slip-and-fall case stating that she was Chief Financial Officer of CSOKI and Vice President of CSSC-LLC.

Defendants argue that Plaintiffs fail to "demonstrate a cause of action against CSOKI that arises from its contacts with the forum state." Dkt. No. 31 at 5. Defendants, relying on the declaration of Julie Dean, explain that "CSOKI does not sell or offer cellular services or accessories" and that "CSOKI has never entered into a Sales Agreement, or any other type of agreement, employment or otherwise, with Plaintiffs' sales companies or Plaintiffs." *Id.* at 6. Defendants also argue that there is no evidence that "CSOKI created the training materials, directed them to South Carolina, or otherwise provided them to Plaintiffs." *Id.* They contend that, "[a]t most, the training materials were circulated as an administrative or support service by CSOKI to its subsidiaries" and that such services "do not support personal jurisdiction over the parent entity." *Id.* Defendants contend that Plaintiffs have cited no exception to the "well-established rule that a subsidiary's contacts do not subject the parent to personal jurisdiction" and that Plaintiffs even admit that they "are not asserting that CSSC-LLC's contacts should be imputed to CSOKI." *Id.* at 7.

Finally, Defendants argue that the fact that CSOKI is a co-signatory on a lease of the store location where Plaintiffs worked does not subject CSOKI to specific jurisdiction because this action does not arise from "ownership of the property, such as a contractual dispute regarding the lease agreement or a personal injury related to the premises." *Id.* at 7-8.

**General Jurisdiction.** Plaintiffs contend that CSOKI's "contacts with South Carolina are continuous and systematic" to establish general jurisdiction over CSOKI. Dkt. No. 23 at 5. Plaintiffs argue that the following contacts support general jurisdiction: (1) CSOKI has " applied to do business in South Carolina and ha[s] received authority to transact business in South Carolina"; (2) CSOKI has a registered agent located in South Carolina listed with the South Carolina Secretary

of State's office; (3) CSOKI has a brick and mortar store location in Hilton Head;[9] (4) CSOKI's "lease agreements in South Carolina"; (5) CSOKI's website, including features that will assist a user in finding a Cellular Sales location in South Carolina, allow users to download employment applications for stores in South Carolina, and allow users to view a recruiting video; and (6) named Plaintiffs were "trained, at least in part, using training materials provided by [CSOKI]."

Plaintiffs argue that CSOKI's application to do business and appointment of service agent, along with lease agreements and store locations in South Carolina support general jurisdiction. Plaintiffs argue that, because CSOKI's website contains interactive features that can be utilized by people in South Carolina, CSOKI has sufficient contacts to subject it to general jurisdiction. For example, Plaintiffs cite to a general recruiting video for employees and links to employment opportunities in a variety of locations, including South Carolina. The website also appears to allow applicants to complete an application online for a job in South Carolina.

CSOKI contends that CSOKI's application to do business and appointment of an agent for service does not subject CSOKI to personal jurisdiction in South Carolina. Further, CSOKI contends that the fact that it co-signed a lease for a Columbia, South Carolina retail store location does not establish CSOKI's contacts with South Carolina are continuous and systematic. CSOKI argues that nothing is sold through the website and that the users are directed to a subsidiary's retail store location. Dkt. No. 31 at 10 (citing Declaration of Julie Dean, at ¶ 3.) Further, CSOKI argues that the website's employment pages provide administrative services to its subsidiaries and that it does not employ sales representatives. *Id*. CSOKI contends that a parent's provision of administrative

---

[9] Plaintiffs have not submitted anything to show that CSOKI, and not CSSC-LLC, "maintains" a retail store in Hilton Head. Presumably, Plaintiffs rely on the fact that CSOKI's registered agent is listed at the address of a prior retail location at a mall in Hilton Head.

services to its subsidiaries, including providing a unified website, does not subject it to general jurisdiction in the states where the subsidiaries are located. *Id.* at 9-11(citing cases). Similarly, CSOKI contends that any training materials created by CSOKI and reviewed by Plaintiffs do not establish sufficient contacts to establish general jurisdiction.[10]

**Jurisdictional Discovery.** Plaintiffs request that, should the court find insufficient contacts, the court allow Plaintiffs to conduct limited jurisdictional discovery. The court finds that Plaintiffs are entitled to limited jurisdictional discovery. Although Plaintiffs could have presented more evidence from the named Plaintiffs as to their contact with CSOKI or any of its employees, Plaintiffs have identified contacts that raise a question as to whether CSOKI is subject to personal jurisdiction in South Carolina. For example, although Plaintiffs refer to multiple "lease agreements" in their opposition brief, Plaintiffs have not established any supporting evidence to support this assertion, with the exception of state court filings that suggest CSOKI co-signed the lease for the Forest Drive store location in Columbia. Further, the website evidence presented was accessed on July 27, 2012. There is no evidence of the website's contents or features prior to this date, particularly the dates when Plaintiffs were hired. There is also no evidence as to the creation of Plaintiffs' LLCs. At this time, the court finds that Plaintiffs have identified some contacts that, with discovery, may reveal additional contacts which would subject CSOKI to personal jurisdiction.

The court allows discovery as to the following subjects, which are relevant to whether the court has personal jurisdiction over CSOKI:

---

[10] Neither CSOKI nor Plaintiffs establish how Plaintiffs received the training materials.

(1) The interactive features of CSOKI's website at the time Plaintiffs were hired or retained[11] as independent contractors, whether CSOKI was involved in the hiring process of Plaintiffs or other independent contractors of CSSC-LLC (including initial review of applications), and whether CSOKI provides any human resources assistance to CSSC-LLC;

(2) The formation of Plaintiffs' LLCs, including who advised Plaintiffs to create LLCs, any paperwork provided to Plaintiffs regarding LLCs, and any contact Plaintiffs or CSSC-LLC had with CSOKI as to LLCs;

(3) The training of Plaintiffs when they were first hired and during their relationship with CSCC-LLC including distribution of policies created by CSOKI, and meetings or training sessions with CSOKI;

(4) Plaintiffs' compensation, including whether CSOKI set the compensation schedule or otherwise assisted in computing or distributing Plaintiffs' pay; and

(5) The relationship between CSOKI and CSSC-LLC, including any overlapping officers, managers, or employees.

Plaintiffs may serve requests for production and interrogatories directed to these subjects within 14 days of entry of this order. Defendants shall respond to such requests within 28 days of service. In addition to written discovery, Plaintiffs may take the depositions of Julie Dean and Mike Baker, and may conduct one Fed. R. Civ. P. 30(b)(6) deposition of CSOKI, limited to the topics above or other subjects directly related to personal jurisdiction.[12] Plaintiffs shall file a supplemental brief no later than December 19, 2012. Any reply is due by January 2, 2012. Should Plaintiffs fail to file a supplemental brief, the court will grant CSOKI's motion to dismiss for lack of personal jurisdiction.

---

[11] The court makes no determination as to whether Plaintiffs were independent contractors or employees of Defendants. The court generally refers to the "hiring" of Plaintiffs to describe the beginning of Plaintiffs' relationship with CSSC-LLC and/or CSOKI.

[12] Given the court's deadlines, the parties are encouraged to promptly schedule any depositions for a date after receipt of discovery requests.

## CONCLUSION

The court stays CSOKI's motion to dismiss for lack of personal jurisdiction pending limited jurisdictional discovery. Plaintiffs shall file a supplemental brief no later than December 19, 2012, and CSOKI shall file any reply by January 2, 2013.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
October 18, 2012