**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Daniel J. Newbanks and Jennifer Walton, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Cellular Sales of Knoxville, Inc. and Cellular Sales of South Carolina, LLC <br><br> Defendants. | C.A. No. 3:12-1420-CMC <br><br> **ORDER GRANTING MOTION TO AMEND COMPLAINT AND DENYING MOTION TO COMPEL ARBITRATION** |

This matter is before the court on motion to compel arbitration and dismiss the collective action, filed by Defendants Cellular Sales of Knoxville, Inc. ("CSOKI")[1] and Cellular Sales of South Carolina, LLC ("CSSC-LLC"), on July 11, 2012. Dkt. No. 6. Plaintiffs filed a response on August 18, 2012 (Dkt. No. 24), to which Defendants replied on August 29, 2012 (Dkt. No. 32). On August 22, 2012, Plaintiffs filed a motion to amend the Complaint "to allege only facts that pre-date the execution of any alleged arbitration agreement between the Defendants and the Plaintiffs or any class members." Dkt. No. 26-2 at 2. Defendants responded to Plaintiffs' motion to amend on September 10, 2012 (Dkt. No. 36), and Plaintiffs replied on September 20, 2012 (Dkt. No. 37). The court considers Plaintiffs' motion to amend the Complaint first and then considers Defendants' motion to compel arbitration. For reasons set forth below, Plaintiffs' motion to amend the Complaint is granted, and Defendants' motion to compel arbitration and dismiss the collective action is denied.

---

[1] CSOKI filed a motion to dismiss for lack of personal jurisdiction. Dkt. No. 5. On October 18, 2012, the court stayed the motion to dismiss and granted Plaintiffs' request for jurisdictional discovery. Dkt. No. 38. Should the court determine that it does not have personal jurisdiction over CSOKI, this order will apply only to CSSC-LLC.

**BACKGROUND**

Plaintiffs Daniel J. Newbanks ("Newbanks") and Jennifer Walton ("Walton") allege that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"). Plaintiffs have asserted this action on behalf of themselves and other similarly-situated persons. Dkt. No. 1 at ¶ 1 (Complaint). Plaintiffs allege that Defendants "misleadingly classified them as independent contractors in order to avoid state and federal laws including the FLSA and SCPWA." Dkt. No. 23 at 1. Plaintiffs Newbanks and Walton allege that when they were hired by Defendants in May 2011 and October 2011, respectively, they were required to form a limited liability company ("LLC"), and that they and their LLCs entered into contracts with Defendants. *Id.* at ¶¶ 34, 35, 44, 45. Defendants submitted copies of Non-Exclusive Sales Agreements ("Sales Agreements") and Member Indemnification Agreements ("Indemnification Agreements") entered between Plaintiffs' LLCs and CSSC-LLC, and dated the month after Plaintiffs' alleged date of hire.[2] Plaintiffs allege that Defendants categorized Plaintiffs as independent contractors but held them out as employees by scheduling their work shifts; providing them with all of the necessary equipment including the store location, cellular equipment, and service plans; mandating compliance with a dress code; mandating training and periodic meetings with supervisors and other employees; and by having Plaintiffs perform Defendants' core service of selling cellular telephones, equipment, and service plans through Verizon Wireless. *Id.* at ¶¶ 38, 48.

---

[2] The Complaint states that Newbanks was hired in May 2011 and Walton was hired in October 2011. Newbanks' Sales and Indemnification Agreements are dated June 7, 2011, and Walton's Sales and Indemnification Agreements are dated November 15, 2011.

In December 2011, Plaintiffs allege that Defendants advised them that, as of January 1, 2012, payments for their services would be made to them individually, and not their LLCs. *Id.* at ¶¶ 39, 49.³ In connection with this change, Plaintiffs signed Compensation Agreements as employees of Cellular Sales. The Compensation Agreements are not dated. Defendants, however, submitted a declaration by CSSC-LLC's Regional Director, Mike Baker, in which Baker avers that the Compensation Agreements were executed in connection with their offers of full-time employment on or about December 30, 2011. The Compensation Agreements contain arbitration clauses that provide that "[a]ll claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with Company shall be decided by arbitration . . . ." Dkt. No. 6-2 at 2, 6-3 at 2. The Compensation Agreements also provide that "Employee hereby agrees to arbitrate any such claims, disputes, or controversies only in an individual capacity and not as a plaintiff or class member in any purported class, collective action, or representative proceeding." *Id.* The arbitration requirement "survives the termination of Employee's employment with the Company." *Id.*

Plaintiffs left their employment with Defendants in 2012. Complaint at ¶¶ 40, 50. They filed this action on May 29, 2012, alleging that they were employees of Defendants but were improperly categorized as independent contractors. Dkt. No. 1. Plaintiffs seek relief under the FLSA and SCPWA based on their status as employees for violations of minimum wage and overtime provisions, and for improperly withholding money from their paychecks. Complaint at ¶ 65.

On August 22, 2012, Plaintiffs filed a motion to amend the Complaint to narrow their claims to the time prior to the execution of the Compensation Agreements. Dkt. No. 26-2 at 2.

---

³ Plaintiffs delete this allegation from their proposed amended complaint.

3

## I. MOTION TO AMEND

Plaintiffs filed a motion to amend the Complaint after Defendants moved to compel arbitration based on an arbitration clause found in the Compensation Agreements signed by Plaintiffs. Plaintiffs seek to amend their Complaint to limit their claims to those arising prior to the execution of the Compensation Agreements.

**Standard.** Rule 15 of the Federal Rules of Civil Procedure provides that, with certain exceptions not applicable here, a party should be allowed to "amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Leave should, however, "be freely given when justice so requires." *Id.* Applying this rule, the United States Supreme Court has held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Ward Elecs. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (holding that "a change in the theory of recovery and one prior amendment of the complaint [were] not sufficient to justify denial of leave to amend under the principles of Foman" absent some resulting prejudice to the opposing party); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980).

**Discussion.** Although Plaintiffs do not concede that the arbitration clause requires Plaintiffs to arbitrate their claims arising after the execution of the Compensation Agreements, Plaintiffs "seek to clarify that their claims pertain only to Defendants' conduct which pre-dates the arbitration clause at issue." Dkt. No. 26-2 at 2. Defendants oppose this motion, arguing that Plaintiffs' "clear intent is to craft their Complaint in such a manner to try and avoid or limit the effect of their arbitration provisions." Dkt. No. 36 at 2 (citing *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347 (4th Cir. 2001)).

In *Drews*, the Fourth Circuit considered whether an arbitration clause contained in a distributor agreement for video gambling machines required the parties to arbitrate a dispute that arose out of payments owed pursuant to an earlier letter agreement. 245 F. 3d at 349. The letter agreement stated that the parties would draft and execute an exclusive distributor agreement and provided for payment terms for 200 machines. *Id.* at 348. Partial payment was due upon execution of the distributor agreement, with the balance due upon delivery of updated hardware. *Id.* The distributor agreement was executed a few weeks later with an arbitration clause, which provided that "any controversy or claim arising out of or related to this Agreement, or the breach hereof, will be settled by arbitration." *Id.* at 349. It also contained a merger or integration clause, which provided that the distributor agreement, "with the exception of the Letter Agreement," represents the entire agreement between the parties. Plaintiff sought to avoid arbitration arising from its refusal to pay the balance owed on the 200 machines. *Id.* Plaintiff argued that the dispute arose from the Letter Agreement, which was excluded from the arbitration clause, and that the complaint did not rely on the distributor agreement. *Id.* at 350. The Fourth Circuit rejected that argument and found that the dispute as to payment for the 200 machines was related to the distributor agreement and therefore

5

subject to arbitration. *Id.* at 350-51. The court noted that a party cannot "retroactively restrict or eliminate its contractual obligation to arbitrate a dispute by fashioning a limited complaint." *Id.* at 350.

Plaintiffs reply that *Drews* is distinguishable because the parties in *Drews* "specifically contemplated the second agreement in their first agreement (e.g., the first agreement was conditioned on entering into the second agreement, and the second agreement specifically governed the distribution of the machines sold via the first agreement). Dkt. No. 37 at 2. Plaintiffs argue that Plaintiffs' claims, as limited in the proposed amended complaint, do not in any way arise from or relate to the Compensation Agreements.

Plaintiffs shall be allowed to amend their complaint under Rule 15. The court finds that Plaintiffs' claims are limited to the time they were treated by Defendants as independent contractors. As explained below, this amendment is not futile because the court concludes that the arbitration clause does not relate back to the relationship between Plaintiffs and Defendants prior to the Compensation Agreements. Once Plaintiffs became employees at the end of December 2011 or beginning of January 2012, any claims related to Plaintiffs' employment are subject to arbitration.[4]

---

[4] Under their first cause of action (FLSA), Plaintiffs deleted a reference for money withheld from "final" paychecks, which would have been due after the agreement to arbitrate had been entered. Dkt. No. 26-1 at ¶ 65(d) ("by withholding money from Plaintiffs and the putative class members [*sic*] paychecks"). However, Plaintiffs still allege that Defendants withheld money from Newbanks and Walton's "final check for chargebacks that might occur in the future." Dkt. No. 26-1 at ¶¶ 43, 53. Although it appears to be a drafting error, the court finds that, to the extent that the withholdings from Plaintiffs' final checks relate to their employment after the execution of the Compensation Agreements, that issue is subject to arbitration. Plaintiffs are, therefore, directed to correct their proposed amended complaint either (1) to delete any remaining reference to "final" paychecks or (2) to specify that the withholdings in dispute arise from Plaintiffs' relationship with Defendants prior to the Compensation Agreements.

The court, therefore, grants Plaintiffs' motion to amend their Complaint and directs Plaintiffs to file the amended complaint, with the edit explained in footnote 4, within 7 days of this order.

## II. MOTION TO COMPEL

Defendants filed a motion to compel arbitration and to dismiss the collective action based on the arbitration clause in the Compensation Agreements. Based on Plaintiffs' proposed amended complaint, the court considers whether Plaintiffs' claims, as limited to claims arising from Defendants' conduct pre-dating the Compensation Agreements, are subject to arbitration.

**Standard.** The dispute as to arbitrability must be resolved under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, which provides that arbitration clauses in contracts that involve interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a strong policy favoring arbitration under federal law. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, the court compels arbitration if the movants, here Defendants, demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation omitted).

**Discussion.** Defendants argue that Plaintiffs are subject to the valid and enforceable arbitration clause in the Compensation Agreements. Defendants contend that Plaintiffs must

7

establish that they were employees to recover under the FLSA and SCPWA, and that any claims related to Plaintiffs' employment must be arbitrated pursuant to the arbitration clause in the Compensation Agreements. Plaintiffs respond that their claims "should be allowed to go forward in this Court insofar as those claims relate to conduct preceding the compensation agreement." Plaintiffs argue that Defendant should not be able to "force the plaintiffs to arbitrate claims arising from an employment that the defendants' [*sic*] deny."[5]

Plaintiffs do not dispute the validity of the Compensation Agreements. Neither do Plaintiffs challenge the enforceability of the Compensation Agreements based on unconscionability, duress, fraud, or mistake. Plaintiffs only dispute the scope of the arbitration provision and argue that any ambiguity as to whether the arbitration clause applies to claims predating the Compensation Agreements should be construed against the drafter, Defendants. Dkt. No. 26-2 at 5.

The arbitration clause in the Compensation Agreements provides that "[a]ll claims, disputes, or controversies arising out of, or in relation to this document *or Employee's employment with Company* shall be decided by arbitration." Dkt. No. 6-2 at 2, 6-3 at 2 (emphasis added). Prior to the Compensation Agreements, Plaintiffs allege that they were treated by Defendants as independent

---

[5] Plaintiffs also contend the following:

> As the defendants' own affidavit states, the named plaintiffs were not "officially" made full time employees until December 2011. How can the defendants then seek shelter in arbitration for conduct occurring before that time without admitting that the plaintiffs were, in fact, employees prior to their entering into the Compensation Agreement? Moreover, how can the employees possibly have knowingly and voluntarily agreed to arbitrate "employment" disputes when as far as the defendants' own statements are concerned, the plaintiffs were not considered employees until signing the compensation agreement?

Dkt. No. 24 at 1-2.

contractors. Neither the Sales Agreements nor Indemnification Agreements, which were executed with respect to Plaintiffs' relationship with Defendants as independent contractors, have an arbitration clause. The Compensation Agreements do not contain a merger or integration clause and do not reference Plaintiffs' prior relationship with Defendants. *Cf. Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 265 (4th Cir. 2011) ("Although the arbitration clause does not specifically state that it applies to claims accruing before the 2007 Agreement, courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties."). Although the language of the arbitration clause is broad, nothing in the Compensation Agreements refers to any prior relationship between the parties. The court concludes that Plaintiffs did not agree to arbitrate any claims arising from their relationships with Defendants prior to the Compensation Agreements.

## CONCLUSION

The court grants Plaintiffs' motion to amend the Complaint and directs Plaintiffs to file an amended complaint within 7 days of this order. The court denies Defendants' motion to compel arbitration and to dismiss Plaintiffs' collective action.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 18, 2012